1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
2

3    United States of America,    ) Criminal
                                   ) No. 18-CR-031
4                    Plaintiff,    )
                                   ) ARRAIGNMENT AND PLEA
5    vs.                           ) HEARING
                                   )
6    Alex Van der Zwaan,           ) Washington, DC
                                   ) February 20, 2018
7                    Defendant.    ) Time:  2:30 p.m.
     _____
8
              TRANSCRIPT OF ARRAIGNMENT AND PLEA HEARING
9                         HELD BEFORE
           THE HONORABLE JUDGE AMY BERMAN JACKSON
10              UNITED STATES DISTRICT JUDGE
11   _____

                     A P P E A R A N C E S
12

13   For the Plaintiff:    **Andrew Weissmann**
                           **Greg Donald Andres**
                           **Brian Richardson**
14                         U.S. DEPARTMENT OF JUSTICE
                           Special Counsel's Office
15                         950 Pennsylvania Avenue, NW
                           Washington, DC 20530
16                         (202) 514-1746
                           Email: Aaw@usdoj.gov
17                         Email: Gda@usdoj.gov

18   For the Defendant:    **William Jay Schwartz**
                           **Laura Grossfield Birger**
19                         **Nicholas Andrew Flath**
                           COOLEY, LLP
20                         1114 Avenue of the Americas
                           46th Floor
21                         New York, NY 10036
                           (212) 479-6290
22                         **David Edward Mills**
                           COOLEY, LLP
23                         1299 Pennsylvania Avenue, NW
                           Suite 700
24                         Washington, DC 20004
                           (202) 776-2865
25                         Email: Dmills@cooley.com

1     Pretrial Services:        Andre Sidbury

2     FBI Special Agent:        Jason Alberts

3     Court Reporter:           Janice E. Dickman, RMR, CRR
                                Official Court Reporter
4                               United States Courthouse, Room 6523
                                333 Constitution Avenue, NW
5                               Washington, DC  20001
                                202-354-3267
6
                                     *   *   *
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURTROOM DEPUTY:  Your Honor, this afternoon

2     we have criminal case number 18-31, the United States of

3     America v. Alex Van der Zwaan.  Mr. Van der Zwaan is present

4     in the courtroom, Your Honor.

5          Will counsel for the parties please approach the

6     lectern, identify yourself for the record.

7          MR. WEISSMANN:  Good afternoon, Your Honor.  For

8     the Special Counsel's Office, Andrew Weissmann, Brian

9     Richardson, Greg Andres.  And with us at counsel table is

10    Special Agent Jason Alberts with the FBI.

11         THE COURT:  All right.  Good afternoon.

12         MR. SCHWARTZ:  Good afternoon, Your Honor.  For

13    the defendant, William Schwartz, with my partners Laura

14    Birger, and David Mills.  And we have Nicholas Flath from

15    our firm as well.

16         THE COURT:  Good afternoon.  I understand that

17    we're here because the defendant wishes to enter a plea of

18    guilty, is that correct?

19         MR. SCHWARTZ:  Yes, it is, Your Honor.

20         THE COURT:  All right.  So the first thing we need

21    to do is swear him in and arraign him on the information and

22    then proceed to ask him some questions.

23         THE COURTROOM DEPUTY:  Good afternoon, sir.  Are

24    you the person who is named in the information?

25         THE DEFENDANT:  Yes, I am.

1              THE COURT:  You are Alex Van der Zwaan?

2              THE DEFENDANT:  I am.

3              THE COURT:  Your Honor, may the record reflect

4      that both Mr. Van der Zwaan and his counsel have received a

5      copy of the information which has been filed in this case.

6              Mr. Van der Zwaan, you are charged in criminal case

7      number 18-31 in a one-count information charging you with

8      18 United States Code § 1001(a)(2), false statements.  Do

9      you waive formal reading of the information?

10             THE DEFENDANT:  I do.

11             THE COURTROOM DEPUTY:  For purposes of arraignment,

12     how do you plead?

13             THE DEFENDANT:  Not guilty.

14             THE COURT:  Will you please raise your right hand.

15                        ALEX VAN DER ZWAAN,

16     having been duly sworn, was examined and testified as follows:

17             THE COURT:  All right.  Mr. Van der Zwaan, the

18     purpose of the hearing this afternoon is for you to make a

19     decision, whether you wish to go to trial on the charges

20     against you or whether you want to enter a plea of guilty.

21     In order to make an important decision like that, it's vital

22     that you understand everything that's going on and all the

23     rights and the procedures that I'm going to be explaining to

24     you.

25             If I ask you a question and you don't understand

1     it, please feel free to ask me to restate it or explain it

2     to you before you have to answer it.  Or if I ask you a

3     question and you would like to confer with your counsel

4     before you answer my question, just let me know that you

5     need to do that and I'll permit you to do that.  Do you

6     understand that much?

7              THE DEFENDANT:  I do, Your Honor.  Thank you.

8              THE COURT:  And do you also understand that you've

9     just been sworn and that that means you, obviously, have to

10    answer my questions truthfully, but if you don't, you could

11    be prosecuted for perjury or making a false statement for

12    not telling the truth in these proceedings?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  All right.  Now, Counsel, as I

15    understand it, he's pleading guilty to this information,

16    which is the one count of making false statements, in

17    violation of 18 U.S. Code § 1001, and the statements are

18    specified in the information.  And the parties have agreed

19    that he's not going to be charged for any other false

20    statements made to the Office of Special Counsel on November

21    3rd or December 1st, 2017, or with destroying or withholding

22    any documents or evidence in connection with a request to

23    him or his law firm, or any violations of the Foreign Agent

24    Registration Act or other law arising out of the preparation

25    or publication of a report created for the Ukraine Ministry

1      of Justice related to the trial of Yulia Tymoshenko.  Is

2      that your understanding of the plea arrangement?

3              MR. SCHWARTZ:  Yes, it is, Your Honor.

4              THE COURT:  And also, the government is not asking

5      that he be detained pending sentence at this time?

6              MR. SCHWARTZ:  That's correct, Your Honor.

7              THE COURT:  All right.  Now, Mr. Van der Zwaan, in

8      order to decide whether or not I should accept your guilty

9      plea, it's necessary for me to be sure that you understand

10     the terms of the plea and the consequences of pleading

11     guilty.  So the law requires me to ask you a number of

12     questions.  And some of them are personal and some of the

13     answers to some of them may seem obvious, but they're all

14     designed so that I can assure myself that you know what

15     you're doing today.

16              So the first question I have to ask you is:  How

17     old are you?

18              THE DEFENDANT:  I'm 33, Your Honor.

19              THE COURT:  All right.  And can you read and write?

20              THE DEFENDANT:  Yes.

21              THE COURT:  How far did you go in school?

22              THE DEFENDANT:  I received a bachelor's degree in

23     law from King's College at the University of London.  And

24     I've also passed a course which, I suppose, is the

25     equivalent of your bar examinations, in England, entitling

1     me to be a solicitor in the U.K.

2                    THE COURT:  All right.  And where were you born?

3                    THE DEFENDANT:  In Brussels, Belgium.

4                    THE COURT:  So are you a citizen of both Belgium

5     and the U.K. at this point?

6                    THE DEFENDANT:  No.  I'm a Dutch citizen, Your

7     Honor.

8                    THE COURT:  Dutch citizen.  Okay.  Do you understand

9     that since you are not a U.S. citizen, that conviction of

10    this offense could result in your deportation or future

11    exclusion from the United States or denial of citizenship at

12    some point in the future under our immigration laws?

13                    THE DEFENDANT:  Yes, Your Honor.

14                    THE COURT:  Have you taken any alcohol or drugs in

15    the last 48 hours, or any medicine that could affect your

16    ability to understand what you're doing by pleading guilty?

17                    THE DEFENDANT:  No, Your Honor.

18                    THE COURT:  Have you ever received any treatment

19    for any type of mental illness or emotional disturbance?

20                    THE DEFENDANT:  No, Your Honor.

21                    THE COURT:  Have you received a copy of the

22    information, the written charge pending against you in this

23    case?

24                    THE DEFENDANT:  I have, yes.

25                    THE COURT:  And have you fully discussed the charge

1    and the case in general with your lawyer?

2              THE DEFENDANT:  Yes.  Thank you.

3              THE COURT:  Are you completely satisfied with the

4    services of your lawyer in this case?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Have you had enough time to talk with

7    your attorneys and discuss the case and the plea offer and

8    whether or not you should accept it?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  All right.  Mr. Weissmann, has the

11   government produced any exculpatory information in its

12   possession to the defendant in this case?

13             MR. WEISSMANN:  We're not aware of any.  We know

14   our obligation would be to turn it over.  But we're not

15   aware of any.

16             THE COURT:  All right.

17             Now, Mr. Van der Zwaan, you have certain rights in

18   a criminal case and I need to go over them all with you.

19             First of all, you're being charged with an

20   information, which is basically just a piece of paper that

21   the government typed up the charges on.  But it is a felony

22   charge.  So you have a right to be charged by an indictment

23   by a grand jury, which means that the government would have

24   to present evidence to the grand jury and persuade 12 of

25   them, out of 16, that there is probable cause that this

1      crime was committed and that you committed it.  Do you

2      understand that by pleading guilty to an information, you

3      are giving up your right to be charged by an indictment by

4      the grand jury?

5                    THE DEFENDANT:  Yes, Your Honor.

6                    THE COURT:  And I have in front of me a document

7      that says Waiver of Indictment.  Is this your signature on

8      the bottom, giving up your right to be charged by a grand jury?

9                    THE DEFENDANT:  It is.

10                   THE COURT:  Now, once you've been charged, you

11     have a right to plead not guilty and to have a jury trial in

12     this case.  And that would mean that 12 citizens of the

13     District of Columbia would sit there in that jury box and

14     they would be the ones who determine your guilt or innocence

15     based on evidence presented in this courtroom.  Do you

16     understand that you have a right to a jury trial?

17                   THE DEFENDANT:  Yes, Your Honor.

18                   THE COURT:  And do you also understand that if you

19     had a trial, you would have the right to be represented by

20     your lawyer at that trial?

21                   THE DEFENDANT:  Yes, Your Honor.

22                   THE COURT:  And do you understand that at the

23     trial you would have the right, through your lawyer, to

24     confront and cross-examine any witnesses against you?

25                   THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  And you would also have the right at a

2    trial to present your own witnesses, and you would have the

3    right to subpoena them and compel them to be here to testify

4    on your behalf.  Do you understand that?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  And do you also understand that if

7    there were a trial, you would have the right to testify and

8    present evidence on your own behalf, if you wanted to, but

9    you wouldn't have to testify or present any evidence if you

10   didn't want to, because you can't be forced to incriminate

11   yourself or present any evidence in your own case.  Do you

12   understand that?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  And do you also understand that unless

15   and until I accept your guilty plea, you are presumed by the

16   law to be innocent, because it's the government's burden to

17   prove your guilt beyond a reasonable doubt and until it

18   does, you couldn't be convicted at a trial?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  And so do you understand that if you

21   plead guilty in this case and I accept your guilty plea,

22   you're going to give up all the rights I just identified

23   because there will be no trial?

24         THE DEFENDANT:  I do.

25         THE COURT:  And that's something that's so

1       important we ask you to put that in writing.  And so I have

2       a document in front of me called Waiver of Trial by Jury.

3       Is this your signature on the waiver?

4                   THE DEFENDANT:  Yes, it is, Your Honor.

5                   THE COURT:  All right.  I have to sign it, too.

6                   Now, do you also understand that if you went to

7       trial and you were convicted, you would have a right to

8       appeal your conviction to the Court of Appeals and complain

9       about any legal errors that I made in the case and to have a

10      lawyer help you prepare that appeal?

11                  THE DEFENDANT:  Yes, Your Honor.

12                  THE COURT:  All right.  And do you understand that

13      by pleading guilty you're giving up your right to appeal

14      your conviction, and you're also giving up your right to

15      appeal your sentence in this case, unless it exceeds the

16      statutory maximum, the most that I would be permitted to

17      sentence you to under law, or it exceeds the applicable

18      sentencing guideline range, or if your counsel was

19      ineffective in representing you at the time of sentencing.

20      But other than that, there's not going to be an appeal in

21      this case.  Do you understand that?

22                  THE DEFENDANT:  Thank you, Your Honor.  Yes.

23                  THE COURT:  And do you also understand there are

24      statutes here, the Freedom of Information Act and the

25      Privacy Act, through which people ask the government for

1    documents about them that the government might have in its

2    possession.  And as part of your plea you're giving up your

3    right to file those kinds of requests and ask for that

4    information about you.  Do you understand that?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  Did you need to talk to your attorney?

7              THE DEFENDANT:  No.

8              THE COURT:  All right.  And there's also another

9    provision in your plea agreement that you're giving up your

10   right to attack your conviction later under the Federal Rule

11   of Civil Procedure 60(b) or 28 U.S. Code § 2255, when people

12   can come back into court later, after their conviction, say

13   there's something wrong with the conviction.  And here,

14   unless there's new evidence or, again, if you're alleging

15   that your counsel was ineffective, those would be the only

16   reasons you could come back and challenge your conviction in

17   this case.  Do you understand that?

18             THE DEFENDANT:  I understand.  Thank you.

19             THE COURT:  All right.  Now, the next thing I have

20   to make sure is that there is an adequate factual basis for

21   your plea.  And so I'm going to ask the prosecutor to stand

22   up in court and tell you and me what happened in this case.

23   I understand there's a written statement of the offense, but

24   it's my practice to always ask the prosecutor to summarize

25   it orally in court.  And so I'm going to ask you to listen

1   carefully when he's speaking because when he's finished, I'm

2   going to ask you if what he said is true and accurate.

3            Mr. Weissmann.

4            MR. WEISMANN:  Yes.  So, Your Honor, this is to

5   supplement the Statement of Offense that has been provided

6   to the Court.

7            First, by way of background, at the time of the

8   false statements that are charged in the information made on

9   November 3rd, 2017, the Special Counsel's Office had an

10  investigation into FARA violations by Paul Manafort, Richard

11  Gates, and others.  As the Court knows, the current

12  indictment of Mr. Manafort and Mr. Gates, in paragraphs 18

13  and paragraphs 22, there are allegations that are

14  particularly relevant to the investigation at issue.

15           One aspect of that investigation was work by a law

16  firm retained by the Ukraine Ministry of Justice to evaluate

17  the trial of Ms. Tymoshenko.  The Tymoshenko trial was

18  perceived by the United States and other countries,

19  particularly western countries, as severely problematic,

20  given that it was locking up the former prime minister of

21  the Ukraine by the current president, Yanukovych.  There

22  were concerns of selective prosecution, as well as how she

23  was being treated.  That's by way of background.

24           The Ukraine Ministry of Justice retained a law

25  firm, an international law firm to do a report.  And they

1    retained them to do an independent report on the fairness of

2    the trial, and they also retained a public relations firm to

3    deal with the -- what I'll call the roll out of that report.

4    The report was done in the year 2012 and the final release

5    of the report was on December 13th, 2012.

6          Mr. Manafort, Mr. Gates, and one of their colleagues,

7    who is referenced as Person A, worked on the report, as well

8    as the roll out.  They reported to President Yanukovych in

9    connection with their work.  There are references to such

10   reporting in paragraphs 21 and 22 of the indictment before

11   Your Honor.  In addition, in paragraph 22 there is

12   information about evidence supporting that $4 million was

13   funneled by Mr. Manafort and Mr. Gates to pay the law firm

14   through Cypriot accounts controlled by Mr. Manafort and Mr.

15   Gates to the law firm, as well as to other lobbyists in

16   Washington, D.C.

17         Now, in connection with the roll out of the

18   report, there was a plan to have the report rolled out in

19   Europe and in the United States, and that included to the

20   media, as well as to politicians.  The relevance of that

21   being the retention being made by the government and a roll

22   out of communications to the media and to politicians, thus

23   implicating FARA concerns.

24         One of the goals of that roll out was to have the

25   initial media reports being made in the United States.  And

1    in fact, they were made to the *New York Times* as the initial

2    phase of the roll out.

3              Mr. Van der Zwaan's role was that he worked for

4    the law firm that was retained to do this report.  He was a

5    Russian speaker, he worked closely with Mr. Gates in

6    particular, and as well with Person A who was located

7    principally in Ukraine.

8              Mr. Van der Zwaan was interviewed on November 3rd,

9    2017, in Washington, D.C., in the Special Counsel's Office.

10   Present were FBI agents assigned to the Special Counsel's

11   Office and prosecutors.  He was with counsel, he was warned

12   about the ramifications if he were to say something that was

13   intentionally false -- not to make a mistake, but if he said

14   something that he knew was not true -- and said he

15   understood that those ramifications included that it would

16   be a federal offense that brings us here today.

17             So, with respect to the two lies that form the

18   basis for the information, the first relates to communications

19   that he had with Mr. Gates and with Person A, where he

20   identified innocuous conversations, one with Mr. Gates, as

21   the last time he spoke to him being in or around August of

22   2016, and with Person A being in 2014.  In fact, he had had

23   conversations with both of them in September of 2016.  These

24   involved encrypted applications and, also, Mr. Van der Zwaan

25   taping each of those communications.

1          Second -- well, actually, before I get to the

2     second -- in one of those communications Person A referenced

3     a preliminary criminal complaint in the Ukraine in

4     connection with an investigation going on there that would

5     implicate Law Firm A, as well as Mr. Manafort.  And Person A

6     made reference to the payments that were public being --

7     these are in my words because this was said in Russian, so

8     I'm translating it -- that these are, essentially, the tip

9     of the iceberg, that there are many that are unknown.  And

10    that was all recorded.

11         The second part of the charge that's before Your

12    Honor is his making a lie with respect to an e-mail.  During

13    the November 3rd interview, Mr. Van der Zwaan was asked about

14    an e-mail between Person A, in Russian, to Mr. Van der Zwaan

15    at the address he had at the law firm.  That e-mail had not

16    been produced to the Special Counsel's Office and, in fact,

17    not been given to the law firm to produce to us.  And

18    Mr. Van der Zwaan said he had no idea why it is that we had

19    not received that particular e-mail, and that he had not

20    responded to that e-mail when he got it.

21         In fact, Mr. Van der Zwaan knew full well why we

22    didn't get it, which was that he had not produced a series

23    of e-mails, and destroyed e-mails, rather than give them to

24    his counsel to produce to us.  And the communication -- the

25    tape-recording that he made with Person A was in response to

1    that e-mail, and that e-mail asked for Mr. Van der Zwaan to

2    contact Person A and to use an encrypted application in

3    doing so.

4         And then finally, with respect to materiality,

5    since that's one of the elements of 1001, it is material to

6    the Special Counsel's investigation to know of all documents

7    that are responsive, to have all available documents.  It is

8    material to know, in connection with the report that was

9    prepared by the law firm, how it was paid for, who paid for

10   it, what people knew about those payments.  Those are just

11   some of the ways in which the information is material to the

12   investigation that we were conducting.

13        THE COURT:  All right.  Mr. Weissmann, the

14   statement of offense also talks about a statement made

15   during the November 3rd interview about his role in the roll

16   out of the report being very limited, and seems to be an

17   allegation in the statement of offense that that was also

18   not truthful.  But that's not one of the false statements

19   that form the basis for the information?

20        MR. WEISSMANN:  So the information is limited to

21   the two types of lies that are before you.  There is a -- to

22   be blunt, there's a disagreement between the parties about

23   the state of mind of Mr. Van der Zwaan in making those

24   statements.  So, what we did is presented to the Court the

25   facts of what happened and left it to sentencing for the

1    Court to decide whether that -- it would be proper to have

2    inferences to whether those were in fact false.

3          But we thought it best to present to you what

4    those facts are.  And those facts are that in connection

5    with the 2012 report, which was supposed to be an

6    independent report against the direction and understanding

7    of the senior partner at the law firm, Mr. Van der Zwaan

8    gave to the press firm that was retained to do the roll out

9    an advance draft copy of the report.

10          In addition, and again without authorization, Mr.

11   Van der Zwaan gave to Mr. Gates orally, but that was then

12   memorialized by Mr. Gates, a series of talking points as to

13   how to spin the report when it was made public.  I say

14   against the authorization of the firm because the firm was

15   trying to be very careful, I think, to the most part, in

16   what kinds of communications it had on those issues.  And

17   these were areas where Mr. Van der Zwaan on his own made

18   both of these types of communications.

19          THE COURT:  All right.  Thank you.  All right.

20   Mr. Van der Zwaan, you and your lawyer can come back to the

21   lectern.

22          Putting aside for the moment the information you

23   provided about your role in connection with the use of the

24   report and going back to the two statements that form the

25   basis of the information in this case, is what the

1    prosecutor told me a true and accurate description of what

2    you did in this case?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  And so, did you in fact make false

5    statements to the Office of Special Counsel and the FBI

6    concerning your last communications with Mr. Gates and

7    Person A, and the e-mail that wasn't produced, knowing that

8    they were false at the time that you made them?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  All right.  Now, I have in front of me

11   a document entitled Statement of Offense that writes out the

12   facts of what took place in some detail.  And it has a place

13   for your signature on the back where you accept the

14   statement of facts and indicate that that's what you're

15   pleading guilty to.  But I also require you, before I take

16   the bench, to read over the whole thing and initial and date

17   every page, and that tells me that you've in fact read every

18   page and that you agree with what is on each page.

19             So is this your signature on the last page,

20   accepting this statement of facts as yours?

21             THE DEFENDANT:  I'm sure it is.

22             THE COURT:  All right.  Now, my copy actually

23   doesn't have the lawyer's signature on it, but we're going

24   to need it.

25             THE COURTROOM DEPUTY:  There should be two page 5s.

1          THE COURT:  There's two page 5s.  I see.  All

2     right.  Thank you.

3          MR. SCHWARTZ:  We signed a counterpart, Your Honor.

4          THE COURT:  Yes.  I've got it.

5          Are you the one that wrote VDZ on every page of

6     the Statement of Offense?

7          THE DEFENDANT:  Yes, I am.

8          THE COURT:  Now, I have one more document in front

9     of me, and that's a letter that was written to your lawyer

10    from the prosecutor outlining the term of the plea

11    agreement.  Do you have a copy of that letter as well?

12         THE DEFENDANT:  I've seen a copy of that letter,

13    Your Honor.

14         THE COURT:  All right.  And have you had an

15    opportunity to review it this morning and initial and date

16    every page, letting me know that I've read it before?

17         THE DEFENDANT:  Thank you.  I have, yeah.

18         THE COURT:  Okay.  Now, on the last page of the

19    copy that I have there's a signature page where it says that

20    you read the plea agreement and you accept it.  Is this your

21    signature and the date of February 14th on the plea agreement?

22         THE DEFENDANT:  It is.  Thank you.

23         THE COURT:  Now, I'm going to go over it with you;

24    not every single word, but most of the significant pieces of

25    it.  As I understand it, you're agreeing to plead guilty to

1   the offense of making false statements to the Special

2   Counsel's Office, including the FBI agents who were present,

3   in violation of 18 U.S. Code § 1001(a)(2).  Do you

4   understand that if I accept your guilty plea in this case,

5   you could receive a maximum sentence of up to five years

6   imprisonment?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  Do you also understand that I could

9   sentence you to pay a fine of up to $250,000 for this

10  offense?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  And if I sentence you to a term of

13  imprisonment, I could also sentence you, upon your release,

14  to serve a term of supervised release of up to three years

15  when you would still be under court supervision?

16          THE DEFENDANT:  I understand that, Your Honor.

17          THE COURT:  And do you understand that since this

18  is a felony offense, you have to pay a special assessment of

19  $100 to the Court?

20          THE DEFENDANT:  I do.

21          THE COURT:  All right.  Now, I'm not going to

22  sentence you today.  In deciding on a fair and appropriate

23  sentence, the Court has to consider a number of factors that

24  are set out in 18 U. S. Code § 3553(a).  I have to look at

25  not only what I know right now, which is the nature and

1    circumstances of the offense, but I also have to look at

2    your history and characteristics, and I have to consider the

3    importance of the sentencing fulfilling a number of

4    purposes, like protecting the community or punishing you or

5    deterring other people.  And I have to make sure that your

6    sentence is consistent with sentences imposed on other

7    people who have been convicted of similar offenses.

8              So in connection with that exercise, one of the

9    things that I am going to have to consider is what the U.S.

10   Sentencing Guidelines would recommend.  Congress created a

11   sentencing commission and it has promulgated a set of

12   complicated guidelines for judges to consider when they

13   sentence a defendant in a criminal case.  They set out

14   sentencing ranges for each offense, they can go up or down

15   based on certain factors that relate to the offense and

16   factors related to the offender.  And while we have some

17   idea right now, based on the nature of offense and your

18   background, what that guidelines calculation might be in

19   your case, I won't know until the probation office has an

20   opportunity to do a more in-depth report.

21             That report will go to your lawyers and to the

22   prosecution before I ever see it.  You'll have the opportunity

23   to object to it, to provide additional information you want

24   the probation office to consider.  And after that entire

25   process is over, then the report will be given to me and

1     it's at that point when I'm going to actually make a

2     determination about what the sentencing guidelines would

3     recommend in your case.  And in any event, while I can vary

4     from what the guidelines would recommend, I can never

5     sentence you to more than what the statute says the maximum

6     sentence would be.

7               Have you and your attorney talked about the

8     advisory sentencing guidelines and how they might apply in

9     your case?

10              THE DEFENDANT:  We have, Your Honor.

11              THE COURT:  And what is your general understanding

12    about the guidelines here?

13              THE DEFENDANT:  My general understanding is that

14    the offense gives a, sort of, baseline and then you take

15    into account the offense and mitigating circumstances, and

16    that in my case it looks like it's more or less zero to six

17    months.

18              THE COURT:  All right.  That's where, as I

19    understand it from the plea agreement, the parties have come

20    out.  The base offense level under 2B1.1 would be 6, that

21    there are no adjustments for offense characteristics.  There

22    would be a reduction of two levels for the defendant's

23    acceptance of responsibility under section 3E1.1, bringing

24    him to a level 4, assuming that he has no prior criminal

25    history, which is what everyone's understanding is.  That

1    would produce a recommend advisory sentencing guideline

2    range of zero to six months, and a range for the fine of

3    $5,000 to $9,500.  Is that what you've been told?

4           THE DEFENDANT:  That's what I've been told, Your

5    Honor, yes.

6           THE COURT:  All right.  And I also understand that

7    the parties are agreeing that no one is going to seek a

8    downward departure based on any provision of the guidelines,

9    and that both sides are agreeing that a sentence within that

10   range would be reasonable.  And do you also understand that

11   the government's not obligating itself, after you've been

12   sentenced, to file a motion to reduce your sentence?

13          THE DEFENDANT:  Yes, I do understand that, Your

14   Honor.

15          THE COURT:  Both sides have reserved their right

16   to allocute in this case, which is to stand up and advocate

17   at the time of sentencing about what the sentence should be.

18   And the government has reserved its right to inform me of

19   any other misconduct that's not charged in the information

20   at that time.

21          I do have one question, though, I guess, either

22   for Mr. Weissmann or for defense counsel.  I'm not exactly

23   sure what the agreement is with respect to § 5K1.1.  The

24   plea agreement says I'm not bound to follow the government's

25   recommendation, even if it files a motion for a downward

1    departure based on substantial assistance, but it doesn't

2    really indicate whether the government has agreed to

3    consider doing that or not.

4            MR. WEISMANN:  We are not obligated to do that.

5    And this is a plea agreement, not a cooperation agreement.

6            THE COURT:  All right.  And I take it there is no

7    sentence at this point -- no agreement at this point as to

8    what sentence the government is going to recommend?

9            MR. WEISMANN:  That's correct.

10           And then, Your Honor, I believe this was just an

11   oversight, but I believe the low end of the fine amount -- I

12   believe that the Court may have misspoke or maybe I misheard

13   it -- but I think the Court said $5,000, but I believe the

14   low end is $500.

15           THE COURT:  Okay.  I meant to say $500 to $9,500.

16   If I said $5,000, I apologize.

17           So, Mr. Van der Zwaan, do you understand that I'm

18   not going to be able to determine for sure what the advisory

19   sentencing guide range is in your case until after the

20   presentence report has been completed and we've gone through

21   the process of filing the objections that I talked about

22   before?

23           THE DEFENDANT:  I do, Your Honor.

24           THE COURT:  And do you also understand that there

25   are circumstances under which I could find that a downward

1   departure or an upward departure is warranted under the

2   guidelines?

3          THE DEFENDANT:  I do.

4          THE COURT:  And do you understand that the

5   government has not agreed to file any kind of motion for a

6   downward departure in light of your guilty plea in this case?

7          THE DEFENDANT:  I understand.

8          THE COURT:  All right.  Now, do you also

9   understand that under some circumstances, either you or the

10  government would have the right to appeal, and that would be

11  if I imposed a sentence outside of the guideline range that

12  I find, or that if I agree to certain departures that no one

13  believes at this point that they're asking for, the

14  government would have the right to appeal that or you would

15  have the right to appeal that.  Do you understand that?

16         THE DEFENDANT:  I do, Your Honor.

17         THE COURT:  All right.  Now, do you understand

18  that parole has been abolished for federal offenses?  So if

19  you're sentenced to prison in this case, you're going to

20  serve the sentence I impose, with a possible reduction for

21  good time of up to 54 days per year, but you won't be

22  released early on parole as people used to be?

23         THE DEFENDANT:  I understand.

24         THE COURT:  Now, do you understand that the

25  offense that you're pleading guilty to is a felony?  If your

1    plea is accepted and you're found guilty of that offense, in

2    addition to the immigration consequences we talked about, if

3    you were in this country, that finding could deprive you of

4    certain valuable civil rights, such as the right to vote,

5    the right to hold public office, the right to serve on a

6    jury, or the right to possess a firearm?

7              THE DEFENDANT:  I understand that, Your Honor.

8              THE COURT:  All right.  And do you understand that

9    if, when the time comes, the sentence is more severe than

10   what you're hoping for or what you're expecting, you're

11   still going to be bound by your plea and you're not going to

12   have the right to withdraw it just because of the sentence

13   you received?

14             THE DEFENDANT:  Yes.

15             THE COURT:  All right.  Has anyone, including your

16   attorney, the FBI, the prosecutor, or any other person

17   you've come into contact with during this investigation,

18   promised you or suggested to you that just because you're

19   pleading guilty I will definitely give you a lighter sentence?

20             THE DEFENDANT:  No, they have not.

21             THE COURT:  Has anyone forced you or threatened you

22   or coerced you in any way into entering this plea of guilty?

23             THE DEFENDANT:  No.

24             THE COURT:  Do you understand that the agreement

25   reached in this case that we talked about, the letter,

1    resulted from negotiations between your lawyer and the

2    government lawyer?

3              THE DEFENDANT:  I do, Your Honor, yes.

4              THE COURT:  Has anybody made any promises to you

5    or any representations to you about what's going to happen

6    in connection with this guilty plea, other than those that

7    are set out in the plea letter and that we talked about here

8    today?

9              THE DEFENDANT:  No, Your Honor.

10             THE COURT:  Has anybody promised you what sentence

11   I'm going to impose in this case, if I accept your plea?

12             THE DEFENDANT:  No, Your Honor.

13             THE COURT:  And do you understand right now I

14   don't know what sentence I'm going to impose because I

15   haven't heard from the lawyers and I haven't read the

16   presentence report?

17             THE DEFENDANT:  I understand that.

18             THE COURT:  All right.  And do you understand that

19   even though the government is not asking that you be

20   incarcerated pending sentence in this case, that decision is

21   not binding on me and it's going to be my decision to

22   release you between now and the date of your sentencing?

23             THE DEFENDANT:  I understand that, Your Honor.

24             THE COURT:  All right.  Mr. Van der Zwaan, are you

25   entering this plea of guilty voluntarily and of your own

```
1    free will, because you are guilty and for no other reason?

2              THE DEFENDANT:  I am.

3              THE COURT:  Is there anything you don't understand

4    about this proceeding or about your plea in this case?

5              THE DEFENDANT:  No.  Thank you.

6              THE COURT:  Is there anything you want to ask me

7    or you want to ask your lawyer before I ask you for your

8    final decision in this case?

9              THE DEFENDANT:  No, Your Honor.

10             THE COURT:  All right.  Are you ready now to make

11   a decision about whether you wish to enter a plea of guilty

12   or whether you wish to go to trial?

13             THE DEFENDANT:  Yes, I am, Your Honor.

14             THE COURT:  And what's your decision?

15             THE DEFENDANT:  I plead guilty.

16             THE COURT:  All right.  I'm satisfied that this

17   defendant is fully competent and capable of making a

18   decision today, that he understands the nature and

19   consequences of what he's doing, that he's acting

20   voluntarily and of his own free will, and that there is an

21   adequate factual basis for his plea.  And, therefore, I am

22   going to accept the plea.

23             With respect to his conditions pending sentence,

24   does the FBI have his passport, as was represented to the

25   pretrial services agency?
```

1          MR. WEISMANN:  Yes, it does.

2          THE COURT:  All right.  And the government is not

3     objecting to his release pending sentencing?

4          MR. WEISMANN:  No.  We provided some terms to

5     the -- to your case manager, and I can go over them, as to

6     an agreed-upon bail package that we would like to propose to

7     the Court.

8          THE COURT:  All right.

9          MR. WEISMANN:  And those are an unsecured PRB,

10    that the passport that was given to the FBI would be

11    maintained with the FBI, and that the defendant not seek to

12    obtain any other travel document or passport.  That travel

13    be restricted to the District of Columbia and the Southern

14    and Eastern Districts of New York.  That there would be --

15    permission would need to be -- or, notice would have to be

16    given if he were to leave the District of Columbia to go to

17    New York.  And permission would have to be obtained, with

18    two days notice, if he sought to go anywhere else within the

19    continental United States, but of course he could not travel

20    outside of the continental United States.  Is that --

21         MR. SCHWARTZ:  The only thing I would add, Your

22    Honor, is because he doesn't have his passport, he can't

23    fly.  If he were to come to the Southern District of New

24    York, which is where we have our offices, he would need to

25    travel in all the states in between.  And I think that

1    was -- that's understood by the government.

2             THE COURT:  You mean he's going to have to take a

3    train that would cross between here and --

4             MR. SCHWARTZ:  Yes.  Yes.  Just to be very clear.

5    And that would be on notice, but not with permission.

6             MR. WEISMANN:  And I should say, the defendant has

7    been here in the United States under these terms with --

8    without, obviously, the travel -- all of these travel

9    restrictions and the PRB.  But we have had his passport

10   during this substantial amount of time, and that's the

11   reason why we have some confidence in this particular bail

12   package.

13            THE COURT:  All right.  In light of his voluntary

14   appearance today and his cooperation with the investigation

15   to date, I believe that I can make the finding that he's not

16   going to flee or pose a danger to another person or the

17   community.  He will be released pending sentence on his

18   personal recognizance, provided that his passport remain

19   with the FBI and he not apply for any other.

20            He must remain within the District of Columbia

21   metropolitan area.  He may travel to the Southern District

22   of New York upon prior notice to pretrial services, which he

23   has to give two days in advance, giving them his itinerary

24   of where he's going and when he's coming -- and when he's

25   coming back.  If he wants to travel anywhere else in the

1    United States he has to file a notice with me and receive my

2    permission, and that has to be filed at least two days prior

3    to any trip that he would seek to undertake, two business days.

4          MR. SCHWARTZ:   Okay, Your Honor.

5          THE COURT:   All right.   In terms of his

6    sentencing, I understand that the parties are hopeful of

7    trying to accomplish this on a very expedited basis.

8          MR. SCHWARTZ:   Your Honor, the defendant has been

9    here -- been in the United States since November, when he

10   returned again to meet again with the Special Counsel's

11   Office and correct the statements that he had previously

12   made.   And when he -- after he got here, he found out that

13   his wife had become pregnant in the interim, before he came

14   back.   And she is having a difficult pregnancy in London and

15   we would like to expedite the sentencing, particularly given

16   that there's a zero to six guideline here.   And Your Honor

17   will do whatever Your Honor will do, but it's some

18   possibility that it will not be a difficult sentence and

19   that he might be able to get back in time for the birth of

20   his child and to help his wife through the end of her

21   pregnancy.

22         THE COURT:   When is she due?

23         THE DEFENDANT:   August.

24         MR. SCHWARTZ:   August.

25         THE COURT:   All right.   We had checked with the

1     probation department when we were aware that this request

2     was going to be made.  And I think the hope, your hope was

3     that we could do it in a month.  I think, in terms of their

4     being able to complete the report and deal with the filings

5     from each side, which they'll do in a more truncated

6     schedule, which I know you'll be willing to do under the

7     circumstances, that they needed to set the sentencing date

8     six weeks from today.  So I'm prepared to do that to try to

9     expedite it, but I don't think I can do it any faster than

10    that.

11            MR. SCHWARTZ:  That's acceptable, Your Honor.

12            THE COURT:  All right.  I think that puts us in

13    the week of April 2nd, is that correct?  But April 2nd is

14    Easter Monday, so we would be talking about April 3rd.  Does

15    that work for everyone?

16            MR. WEISMANN:  Yes, Your Honor.

17            THE COURT:  All right.  So we'll set it down for

18    April 3rd at 9:30 in the morning.  Any sentencing memo --

19            No?  Yes?

20            (Off-the-record discussion between courtroom

21    deputy and the Court.)

22            THE COURT:  Let me make it at 10 a.m.  I just

23    realized I have a meeting that starts at 8:30 that might not

24    be over by 9:30.  So we'll do it at 10 a.m. on Tuesday,

25    April 3rd.  Any sentencing memoranda must be filed by March 27.

1              And is there anything else I need to take up on

2      behalf of the defendant right now?

3              MR. WEISMANN:  No, Your Honor.

4              MR. SCHWARTZ:  No, Your Honor.

5              THE COURT:  It will also be a condition of the

6      defendant's release that he contact pretrial services by

7      phone once a week and check in with them.  And they just

8      want to clarify, his travel is to New York City, so that

9      will be the Southern District of New York.  I guess there

10     was some question about whether he might be going to the

11     Eastern District of New York.  Can I just say --

12             MR. SCHWARTZ:  Mr. Weissmann always mentions --

13             THE COURT:  -- New York City?

14             MR. SCHWARTZ:  -- Eastern District, but he only

15     needs to come to the Southern District.

16             THE COURT:  All right.  So that's where he's going.

17             MR. WEISMANN:  That's -- people love Brooklyn

18     these days.  I thought that might be a benefit.  But if he

19     would like to be restricted to Manhattan, that's fine.

20             THE COURT:  All right.  Okay.  They're preparing

21     the paperwork now and you'll need to sign it and then

22     everyone can be excused.

23             THE COURTROOM DEPUTY:  You want April 3rd at 10 a.m.?

24             THE COURT:  April 3rd at 10 a.m. for sentencing.

25             THE COURTROOM DEPUTY:  Booking order to take him

```
 1    to MPD.  He's going to be processed downstairs, but he still

 2    needs to be processed by MPD.

 3              THE COURT:  Counsel, are you aware that I've been

 4    just presented with a booking order in this case that will

 5    require his processing after this case?

 6              MR. MILLS:  Yes.

 7              MR. SCHWARTZ:  Yes, Your Honor.

 8              THE COURT:  All right.

 9              (Pause.)

10              THE COURTROOM DEPUTY:  Mr. Van der Zwaan, please

11    raise your right hand.

12              Do you solemnly swear or affirm that you will well

13    and truly follow the conditions of your release as set forth

14    by the Court this date and that you will do so under the

15    pain and penalty of perjury?

16              THE DEFENDANT:  I do.

17              THE COURTROOM DEPUTY:  He's going to give you

18    something.  We're done, Judge.

19              THE COURT:  Thank you.  We'll see everybody in

20    April.

21                              *   *   *

22

23

24

25
```

CERTIFICATE OF OFFICIAL COURT REPORTER


          I, JANICE DICKMAN, do hereby certify that the above

and foregoing constitutes a true and accurate transcript of

my stenograph notes and is a full, true and complete

transcript of the proceedings to the best of my ability.

                    Dated this 21st day of February, 2018.




                         /s/_____

                         Janice E. Dickman, CRR, RMR
                         Official Court Reporter
                         Room 6523
                         333 Constitution Avenue NW
                         Washington, D.C. 20001