## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | |
| **ALEX VAN DER ZWAAN,** | **Crim. No. 18-31 (ABJ)** |
| **Defendant.** | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The government submits this memorandum in connection with the sentencing of Alex van der Zwaan scheduled for April 3, 2018. On February 20, 2018, van der Zwaan pleaded guilty to one count of making false statements in violation of 18 U.S.C. § 1001(a). The government does not take a position with respect to a particular sentence to be imposed. Instead, the government sets forth its view of the nature of the offense and offender. *See* 18 U.S.C. § 3553(a).

In light of the statement of offense, the plea colloquy, the government's description of the factual basis for the plea during the plea hearing, and the Presentence Report, the Court is already aware of the principal offense conduct. We underscore several points herein. In short, the defendant presents a scarcity of mitigating factors, and several aggravating circumstances.

First, we note that the defendant is a lawyer who was trained at a major international law firm. Indeed, he had worked for almost a decade at his firm at the time of his interview with the Special Counsel's Office in November 2017 at which he lied repeatedly, and prior to which he destroyed and failed to produce pertinent documents.

Second, as explained in the statement of offense, the defendant appeared at the Special Counsel's Office for an interview and lied regarding topics at the center of a significant

investigation into the criminal conduct of Paul J. Manafort, Jr., and Richard W. Gates III.  Both had been indicted just days earlier.   The charges include Manafort and Gates' unregistered work on behalf of Ukraine and specifically referenced their work in commissioning and disseminating a report concerning the trial of the former Prime Minister Yulia Tymoshenko.  *See* Indictment as to Paul J. Manafort, Jr., and Richard W. Gates III at ¶¶ 1–3, 9–11, 18–24, 26, *United States v. Manafort et al.*, No. 17 Cr. 201 ABJ (D.D.C. Oct. 30, 2017).  The defendant worked on this report. From that work, Manafort profited substantially, laundered those profits, and hid both those profits and the conduct from United States authorities, including the Treasury Department and the Department of Justice.  Manafort created a web of entities and corresponding bank accounts in the United States and abroad to hide and facilitate the movement of funds.  *Id*. at ¶¶ 12, 14–17, 27– 32.   As  discussed  below,  among  the  topics  about  which  the  defendant  lied  were  his communications with Gates, his communications with a Ukrainian business associate of Manafort and Gates (Person A), and his failure to produce an email between himself and the Ukrainian business associate—all important matters in the investigation.

Third, at the time of the interview as well as at the time of his destruction of pertinent documents, van der Zwaan was represented by experienced legal counsel.  The defendant was expressly warned by the government that it is a crime to lie to the Special Counsel's Office, that lying could constitute a federal crime, and that such conduct would carry with it the possibility of going to jail if he were convicted.  van der Zwaan stated that he understood.  He thereafter deliberately and repeatedly lied.

Instead of truthfully answering questions about his contacts with Gates and Person A, van der Zwaan lied.  He denied having substantive conversations with Gates and Person A in 2016. When confronted with an email dated September 12, 2016, sent by Person A to van der Zwaan,

the defendant again lied.  The email was sent to the defendant's email address at his law firm, though the Special Counsel's Office had obtained the email from another source.  The email said, in Russian, that Person A "would like to exchange a few words via WhatsApp or Telegram."  van der Zwaan lied and said he had no idea why that email had not been produced to the government, and further lied when he stated that he had not communicated with Person A in response to the email.

As the defendant was aware, he had withheld and otherwise destroyed documents requested by the Special Counsel's Office through his counsel relating to his work with Manafort, Gates, and Person A.  The email with Person A was one such document that the defendant had not produced to his counsel and that the government had obtained through other means.  (His counsel had instructed him to collect all such documents.)  Further, van der Zwaan in fact had a series of calls with Gates and Person A—as well as the lead partner on the matter—in September and October 2016.  The conversations concerned potential criminal charges in Ukraine about the Tymoshenko report and how the firm was compensated for its work.  The calls were memorable: van der Zwaan had taken the precaution of recording the conversations with Gates, Person A, and the senior partner who worked on the report.  In van der Zwaan's recorded conversation with Person A, in Russian, Person A suggested that "there were additional payments," that "[t]he official contract was only a part of the iceberg," and that the story may become a blow for "you and me personally."[1]

---

[1]     As referenced in the indictment, the law firm had been paid over $5 million for its work, largely through third-party payments by a Ukrainian oligarch, funneled through a Manafort and Gates Cypriot account.  The Ukraine potential criminal matter concerned the allegation that in 2012-13 the then-government of Ukraine had disclosed that the firm was being paid only about $12,000 (an amount above which Ukraine law would have required a different procurement process).

Fourth, the lies and withholding of documents were material to the Special Counsel's Office's investigation. That Gates and Person A were directly communicating in September and October 2016 was pertinent to the investigation. Federal Bureau of Investigation Special Agents assisting the Special Counsel's Office assess that Person A has ties to a Russian intelligence service and had such ties in 2016. During his first interview with the Special Counsel's Office, van der Zwaan admitted that he knew of that connection, stating that Gates told him Person A was a former Russian Intelligence Officer with the GRU.[2]

Fifth, the above-described deceptive behavior was consistent with van der Zwaan's conduct working on the Tymoshenko report. The report had been touted to the outside world—as van der Zwaan knew—as an independent evaluation of the trial commissioned by the Government of Ukraine. *See, e.g*., Statement of the Ministry of Justice of Ukraine, *Leading International Law Firm . . . did not Find Evidence of Political Motivation in Judgement of Tymoshenko*, PR Newswire, Dec. 13, 2012 ("The Ministry of Justice has received the independent report of the law firm. . . . In accordance with the signed agreement, [the law firm] has delivered an independent report . . . ."). Further, as van der Zwaan also knew, the law firm had decided not to retain the public relations firm to do the public roll out of the report, precisely because the law firm did not want to be perceived as "whitewashing" or as doing public relations work on behalf of Ukraine.

Yet, although he had been instructed not to share advance copies of the report with the public relations firm retained by the Government of Ukraine, van der Zwaan had, in the words of one witness, "gone native"—that is, he had grown too close to Manafort, Gates, and Person A.

---

[2]     Person A worked with Manafort and Gates in connection with their Ukraine lobbying work. Person A is a foreign national and was a close business colleague of Manafort and Gates. He worked in Ukraine at Manafort's company Davis Manafort International, LLC (DMI). Up until mid-August 2016, Person A lived in Kiev and Moscow.

For instance, far from maintaining a role of independence, he leaked an advance copy of the report to the public relations firm retained to "spin" the report, despite his knowing that this was against the express wishes of the firm.  When it was discovered that the press relations firm had an advance copy, van der Zwaan lied to the senior partner on the matter and said he had no idea how the firm obtained the draft.  In addition, far from distancing himself from spinning the report, van der Zwaan orally gave Gates talking points as to how to present the report in an advantageous light to Ukraine.

Sixth, van der Zwaan is a person of ample financial means—both personally and through his father-in-law, a prominent Russian oligarch, who has paid substantial sums to the defendant and his wife.  He can pay any fine imposed.  *See generally* Complaint, *Mikhail Fridman, Petr Aven & German Khan v. Bean LLC et al.*, No. 1:17-cv-02041 (D.D.C. Oct. 3, 2017).  van der Zwaan, in short, is a person to whom every advantage in life has been given, and from whom the government and the professional bar rightly expected candor and uprightness.

To be sure, after van der Zwaan's lies and withholding of documents were revealed, van der Zwaan produced to his law firm the above-mentioned recordings made on the law firm's recording equipment.  That he did so—and did not further obstruct justice, or further disobey the instructions of his then-employer—is not, however, a mitigating factor.  He does not deserve credit for adhering to the law.

Further, although van der Zwaan has now been terminated from his law firm, that termination is not a circumstance that should mitigate his sentence.  van der Zwaan can hardly have expected to remain at his law firm in light of his unprofessional conduct during 2012 on the report, his withholding and destroying documents in response to his firm's requests, and his lying to the Special Counsel's Office in 2017.  And while there might eventually be additional

professional consequences that befall a foreign lawyer who commits a United States felony, those consequences do not themselves obviate the need for his current sentence to reflect the seriousness of his crime, to promote respect for the law, or to provide adequate specific and general deterrence.

To the extent the Court seeks to take into account the circumstances of van der Zwaan's wife's pregnancy, consideration of that circumstance would not preclude a term of incarceration. As the Advisory Sentencing Guidelines make clear, family responsibilities are "not ordinarily relevant in determining whether a departure may be warranted." *See* U.S.S.G. § 5H1.6; see also *United States v. Dyce*, 91 F. 3d 1462, 1466 (D.C. Cir. 1996) (holding that a departure on the basis of family ties or responsibilities is appropriate only if the case "significantly differs" from the norm); see also *id.* (noting that "Congress has directed the Sentencing Commission to 'assure that the guidelines and policy statements . . . reflect the general inappropriateness of considering the . . . family ties and responsibilities . . . of the defendant'") (quoting  28 U.S.C. § 994(e)).  In any event, a sentence that ensured van der Zwaan's return to the United Kingdom for the birth of his

child in August 2018 would be within the recommended Guidelines' range.

Respectfully submitted,

ROBERT S. MUELLER III
Special Counsel

Dated: March 27, 2018                    By:    ___/s/_____
                                                Andrew Weissmann
                                                Greg D. Andres (D.D.C. Bar No. 459221)
                                                Brian M. Richardson
                                                U.S. Department of Justice
                                                Special Counsel's Office
                                                950 Pennsylvania Avenue NW
                                                Washington, D.C. 20530
                                                Telephone: (202) 616-0800

                                                *Attorneys for the United States of America*